UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Richard Leo Occhino, | Case No. 19-cv-2546 (ECT/LIB) |
| Plaintiff, | |
| v. | **ORDER AND**<br>**REPORT AND RECOMMENDATION** |
| Geo. Sherman and Assoc., et al., | |
| Defendants. | |

---

This matter comes before the undersigned United States Magistrate Judge pursuant to a general assignment made in accordance with the provision of 28 U.S.C. § 636, upon Plaintiff Richard Leo Occhino's Complaint, [Docket No. 1]; and his Application to Proceeds in District Court Without Prepaying Fees or Costs. [Docket No. 2].

For the following reasons, the Court recommends the Complaint be **DISMISSED** and that the IFP Application be **DENIED**.[1]

**I.   Background**

Occhino initiated the present action on September 17, 2019, by filing his Complaint. [Docket No. 1]. Along with his Complaint, Occhino filed a Letter, [Docket No. 3], as well as, a collection of Exhibits. [Docket No. 4]. It appears Occhino wishes the Court to consider the Letter's allegations, as well as, the Exhibits together with his Complaint. (See, Letter, [Docket No. 3]). In

---

[1] In addition Plaintiff has filed a Motion to Appoint Counsel, [Docket No. 9], and at least one other document that also requests an attorney. As the Courts of this District have noted many times, "[a] pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." Stevens v. Redwing, 146 F.3d 538, 546 (8th Cir. 1998) (citing Wiggins v. Sargent, 753 F.2d 663, 668 (8th Cir. 1985)); In re Lane, 801 F.2d 1040, 1042 (8th Cir. 1986) ("The decision to appoint counsel in civil cases is committed to the discretion of the district court.") (citing Nelson v. Redfield Lithograph Printing, 728 F.2d 1003, 1004 (8th Cir. 1984)). Plaintiff has shown a threshold ability to state his claims, his claims do not appear to be factually or legally complex, and it is not clear that appointing counsel is required to benefit either Occhino or the Court. Further, the present Report and Recommendation recommends dismissal of the present action which moots Occhino request for appointment of counsel. On this basis, the undersigned **DENIES** Plaintiff's Motion to Appoint Counsel.

its discretion, the Court will treat the Complaint, the September 2019 Letter, and the Exhibits initially submitted collectively as comprising Occhino's pleading.[2]

Occhino's allegations are somewhat difficult to fully discern. As the Court understands it, Occhino asserts that, beginning in November 1981, the U.S. Department of Housing and Urban Development granted him "Sec. 8 U.S. Federal assisted housing." (Compl., [Docket No. 1], at 4). Starting in July 2013, Occhino lived at Greysolon Plaza (Greysolon), a housing complex in Duluth, Minnesota, purportedly managed by Geo. Sherman & Associates. (See, Id. at 1; Letter, [Docket No. 3], at 5).

At some point in November 2018, Occhino had a dispute with Greysolon staff and management. (See, Compl., [Docket No. 1], at 4). Occhino apparently believed that Greysolon staff and management were not enforcing property rules so as to keep tenants safe, and he verbally confronted Greysolon-related personnel with his concerns. (See, Id.; Compl., [Docket No. 1], at 3).

It appears that after this dispute, Greysolon management began eviction proceedings against Occhino in Minnesota state court; these proceedings took place before Hon. John Schulte, a State District-Court referee. See, Greysolon Apartments, LP v. Occhino, No. 69DU-CV-18-2891, Order at 1–12 (Minn. Dist. Ct. Dec. 11, 2018) (hereinafter "December 2018, Order") (noting earlier proceedings).[3] Occhino represented himself in these proceedings; Greysolon was represented by lawyers from the law firm of Hanft Fride. See, Id.; Greysolon Apartments, LP v.

---

[2] Occhino has filed numerous other documents that assert additional purported factual or legal materials. (See, gen., [Docket Nos. 5–8, 10–11, 14, 16–18, 22, 25, 27, 29–30]). To the extent that these filings seek to amend or supplement the Complaint, the Court will not consider these materials. Occhino has made no formal motion to amend his Complaint. See, LR 15.1. Amending or supplementing a complaint requires a formal motion, see, e.g., LR 15.1(b) (establishing rules for motions to amend pleadings), and none of these filings is a formal motion.

[3] Occhino provided a copy of this December 2018, Order in the initial exhibits he filed with his Complaint. (See, Exhibits [Docket No. 4]).

2

Occhino, No. 69DU-CV-18-2891, Notice of Filing of Order (Minn. Dist. Ct. Apr. 18, 2019).[4] The proceedings culminated in an order and judgment of eviction (Eviction Order). (See Dec. 2018 Order at 1).

On December 11, 2018, Referee Schulte entered an Order staying the Eviction Order "subject to [various] stipulated conditions," including that Occhino pay his December 2018, rent and vacate his Greysolon apartment by noon on January 14, 2019. (Dec. 2018 Order at 1). The December 2018, Order provided that if Occhino met these conditions, then he could move to have the eviction proceedings expunged from court records, and Greysolon management would not oppose the request. (See, Id. at 2). Furthermore, Greysolon agreed not to give a negative rental reference about Occhino to potential future landlords. (See, Id.). The Order indicates that the parties reached this agreement before a hearing, and that "[b]oth parties indicated on the record their acceptance of said agreement." (Id. at 1).

In April 2019, Occhino moved for expungement of the eviction proceedings. See, Greysolon Apartments, LP v. Occhino, No. 69DU-CV-18-2891, Expungement Decision & Order at 1 (Minn. Dist. Ct. Apr. 16, 2019). The state court granted the motion, noting the December 2018, agreement and stating that Occhino "did voluntarily move out." See, Id. As a result, the Court ordered that the eviction proceedings be expunged by the relevant court administrator "removing evidence of the court file's existence from the publicly accessible records." Id.

On the foregoing factual basis, Occhino brings the present cause of action.

The present Complaint names seven Defendants. As noted above, Defendant Geo. Sherman & Associates manages Greysolon. Occhino also names as a Defendant "Duluth Mgmnt. at Greysolon Plaza." In addition, Occhino names the Hanft Fride law firm and its lawyers Holly

---

[4] See, fn. 3, supra.

LaBoon Haller and Brent Malvick. Finally, he names Judicial Referee Schulte, as well as, the State of Minnesota.

The Complaint claims that Referee Schulte "stole[]" Occhino's housing. (Compl., [Docket No. 1], at 4). Aside from this singular glancing reference, Occhino does not otherwise say what causes of action purportedly apply to each Defendant. Indeed, it is not even clear what causes of action Occhino purports to assert. The Court observes that in a section of the Complaint seeking to establish this Court's jurisdiction, Occhino refers to—among other things—(1) the U.S. Constitution's Supremacy Clause, (2) 18 U.S.C. § 245, (3) the First Amendment, and (4) the Americans with Disabilities Act (ADA). (See, Compl., [Docket No. 1], at 3, 4).

For relief, Occhino seeks monetary damages of (1) $10 million each from the State of Minnesota and Defendant Geo. Sherman & Associates; (2) $1 million each from Defendants Hanft Fride, Hallar, and Malvick; and (3) $3 million from Defendant Schulte. (Id. at 4).[5] Occhino also appears to seek injunctive relief under which the State of Minnesota would "stop evictions upon demand." (Id.).[6]

---

[5] The Court's review of the Complaint does not find a specific monetary-relief request for the Defendant identified as the "Duluth Mgmt. at Greysolon Plaza"; however, liberally construing the Complaint in his favor, the Court construes the Complaint as also seeking monetary relief from "Duluth Mgmt. at Greysolon Plaza."

[6] The Court observes that some of Occhino's ancillary filings contain requests asking this Court provide him with shelter for this winter. (See, e.g., Letter [Docket No. 18]; Request [Docket No. 26]). This request is simply outside this Court's purview. Although the Court is sympathetic to Occhino's position, assisting him in finding him winter shelter is not a task within this Court's judicial role. The Court certainly encourages Occhino to make use of other community housing resources that exist in the Duluth area. Specifically, the Court notes that the City of Duluth and St. Louis County work with the Housing & Redevelopment Authority which provides certain low-income housing opportunities. Although Occhino's Complaint is premised on circumstances which occurred with previous a Section 8 housing landlord, there is nothing in his Complaint to suggested that any such problem extends to all low-income housing opportunities available through the Housing & Redevelopment Authority of Duluth. While the Housing & Redevelopment Authority does not apparently provide "emergency housing," it refers persons in need of such housing to the CHUM shelter, and it directs them to call (218) 726-0153. If Occhino remains in need of winter housing, the Court encourages him to take full advantage of the resources available to him through the City of Duluth and St. Louis County.

**II.    Analysis**

Rather than pay the filing fee for this action, Occhino has moved for permission to proceed *in forma pauperis* (IFP). (See, IFP Application [Docket No. 2]). After review, the Court concludes that Occhino qualifies financially for IFP status. But an IFP application will be denied, and an action dismissed, when an IFP applicant has filed a complaint that fails to state a cause of action on which relief may be granted. See, 28 U.S.C. § 1915(e)(2)(B)(ii); Atkinson v. Bohn, 91 F.3d 1127, 1128 (8th Cir. 1996) (per curiam); Carter v. Schafer, 273 F. App'x 581, 582 (8th Cir. 2008) (per curiam) ("[T]he provisions of 28 U.S.C. § 1915(e) apply to all persons proceeding IFP and are not limited to prisoner suits, and the provisions allow dismissal without service.").

In reviewing whether a complaint states a claim on which relief may be granted, this Court accepts the complaint's factual allegations as true and draws all reasonable inferences in the plaintiff's favor. See, Aten v. Scottsdale Ins. Co., 511 F.3d 818, 820 (8th Cir. 2008). The complaint's factual allegations need not be detailed, but they must be enough to "raise a right to relief above the speculative level . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. In assessing a complaint's sufficiency, the court may disregard legal conclusions couched as factual allegations. See, Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Pro se complaints are to be construed liberally, but pro se plaintiffs must still allege sufficient facts to support the claims advanced. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (citing cases).

Further, pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."[7]

---

[7] While Rule 12(h)(3) speaks of dismissing "the action," Courts routinely use the Rule to dismiss portions of actions where jurisdiction is lacking. See, e.g., Chernin v. United States, 149 F.3d 805, 813–14 (8th Cir. 1998); In re Polaris Mktg., Sales Practices, and Prod. Liab. Litig., 364 F. Supp. 3d 976, 982–84 (D. Minn. 2019).

5

### A. Defendant the State of Minnesota

The Court first addresses Occhino's claims against the State of Minnesota.

Under the Eleventh Amendment, "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI. "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." Fryberger v. Univ. of Ark., 889 F.3d 471, 473 (8th Cir. 2018) (emphasis added) (quoting Port Auth. Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 304 (1990)). And the issue is jurisdictional: under the Eleventh Amendment, federal courts generally lack subject-matter jurisdiction over claims against an unconsenting state. See, e.g., Sossamon v. Texas, 563 U.S. 277, 284 (2011) (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 54–55 (1996)); Gardner v. Minnesota, No. 16-cv-03999 (JNE/KMM), 2019 WL 1084714, at *3–4 (D. Minn. Jan. 15, 2019) (quoting Becker v. University of Nebraska at Omaha, 191 F.3d 904, 908 (8th Cir. 1999)), report and recommendation adopted, 2019 WL 1086338 (D. Minn. Mar. 7, 2019).

The record before the Court is devoid of any indication that the State of Minnesota has consented to the present suit. In fact, Occhino does not even suggest that the State of Minnesota has consented to his suit in any way, and the Court is unaware of anything making the State of Minnesota's sovereign immunity inapplicable here. Thus, this Court lacks the subject matter jurisdiction necessary to entertain Occhino's claims against the State of Minnesota.

For the foregoing reasons, the Court recommends Occhino's claims as alleged against the State of Minnesota be **DISMISSED without prejudice** for lack of subject matter jurisdiction.

### B. Defendant Schulte

The Court next discusses Defendant Schulte. As discussed above and according to the materials submitted by Plaintiff in connection with his Complaint, Defendant Schulte is the State District Court Referee who presided over the eviction proceedings underlying the present action. Plaintiff's claims against Defendant Schulte are precluded by the doctrine of judicial immunity.

"A judge is immune from suit . . . in all but two narrow sets of circumstances." Schottel v. Young, 687 F.3d 370, 373 (8th Cir. 2012) (citing Mireles v. Waco, 502 U.S. 9, 11–12 (1991)). These exceptions are that (1) "a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity"; and (2) "a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction." Id. (quoting Mireles, 502 U.S. at 11–12). For the first exception, "[a]n act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." Id. (quoting Birch v. Mazander, 678 F.2d 754, 756 (8th Cir. 1982)). For the second, Courts are to construe a judge's jurisdiction broadly, such that "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the clear absence of all jurisdiction." Id. (quoting Stump v. Sparkman, 435 U.S. 349, 356–357 (1978) (brackets in Schottel)).

Defendant Schulte is a State Court Referee; he is not a State Court Judge. However, Courts in this District, including the undersigned, have repeatedly determined that judicial immunity applies to State Court Referees in the performance of judicial functions. See, e.g., Scheffler v. City of New Hope, No. 18-cv-1690 (SRN/LIB), 2019 WL 2607252, at *5 (D. Minn. Feb. 15, 2019), report and recommendation adopted, 2019 WL 2053994 (D. Minn. May 9, 2019); Jackson v.

7

Marek, No. 18-cv-1432 (JRT/KMM), 2018 WL 3321577, at *2 (D. Minn. June 18, 2018), report and recommendation adopted, 2018 WL 3321439 (D. Minn. July 5, 2018).

In this action, Occhino's allegations regarding Referee Schulte plainly and unequivocally concern only Referee Schulte's judicial actions—namely, actions taken in the underlying eviction proceedings. Occhino fails to suggest, or even hint, that Referee Schulte's relevant actions were "taken in the complete absence of all jurisdiction." Thus, the Court finds that Referee Schulte is entitled to judicial immunity which precludes Plaintiff's claims.

Therefore, Court recommends that Occhino's claims against Defendant Schulte be **DISMISSED without prejudice**.

### C.  Defendants Hanft Fride, Hallar, and Malvick

The Court will next address the claims against the law firm of Hanft Fride and its lawyers Hallar and Malvick. The only factual allegations regarding these Defendants in Plaintiff's Complaint are that Defendant Hanft Fride is the law firm that represented Greysolon in its eviction proceedings against Occhino, and Defendants Hallar and Malvick are the attorneys from Hanft Fride who worked on the matter. Other than these background facts which can be gleaned from the material Occhino submitted with his Complaint, Occhino's materials are devoid of any other factual allegations regarding any action taken by these Defendants outside of their being the law firm and attorneys who represented Defendant Greysolon in the State Court eviction proceeding. Occhino does not assert any specific claim against these Defendants.

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

8

inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67). A plaintiff must make factual allegations in his Complaint that are sufficient to "raise a right to relief above the speculative level."

Regarding Defendants Hanft Fride, Hallar, and Malvick, Occhino's Complaint fails to even allege any specific personal involvement or direct participation by these Defendants in any action with which Occhino takes issue other than that these Defendants were acting in their role as counsel for another Defendant in a State Court proceeding.

Occhino's Complaint therefore fails to plead "factual content that allows the court to draw the reasonable inference that" Defendant Hanft Fride, Hallar, or Malvick is liable for any misconduct alleged in the Complaint. See, Iqbal, 556 U.S. 678–81; Twombly, 550 U.S. at 556–67. "Where attorneys act within the scope of their employment, Minnesota law provides protection from liability to third parties." Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1031 (8th Cir. 2012) (citing McDonald v. Stewart, 289 Minn. 35, 182 N.W.2d 437, 440 (1970)); see, McDonald v. Stewart, 289 Minn. 35, 182 N.W.2d 437, 440 (1970) ("[A]n attorney acting within the scope of his employment as attorney is immune from liability to third persons for actions arising out of that professional relationship."); Hasan v. Bank of Am., N.A., No. 16-cv-2990 (JRT/SER), 2017 WL 1373327, at *4 (D. Minn. Mar. 22, 2017), report and recommendation adopted, 2017 WL 1373260 (D. Minn. Apr. 13, 2017), appeal dismissed, No. 17-2920, 2017 WL 7833757 (8th Cir. Oct. 24, 2017); Brinkman v. Bank of Am., N.A., 914 F. Supp. 2d 984, 999 (D. Minn. 2012), aff'd sub nom. Welk v. Bank of Am., N.A., 515 F. App'x 640 (8th Cir. 2013).

Occhino's Complaint is devoid of any allegation or implication that Defendants Hanft Fride, Hallar, or Malvick acted in any way outside their professional duties as counsel from Defendant Greysolon in the underlying eviction proceeding. Thus, Defendants Hanft Fride, Hallar,

and Malvick are protected from liability on Occhino's claims, and Occhino's claims as pled in his Complaint fail as a matter of law.

Therefore, the undersigned recommends that Occhino's claims as alleged against Defendants Hanft, Haller, and Malvick be **DISMISSED without prejudice**.

### D.  Defendant Geo. Sherman and Assoc. and "Duluth Mgmnt. At Greysolon Plaza"

Next this Court considers Occhino's remaining claims as alleged against Defendants Geo. Sherman and Associates and "Duluth Management at Greysolon Plaza" (collectively the "Management Defendants").

Occhino's Complaint suggests that the Management Defendants were lax in enforcing Greysolon resident community rules, and that their decision to try to evict him was inappropriate. (See, Compl. [Docket No. 1]). In particular, he suggests that the eviction decision was based on his verbal complaints about management's failures to keep up community rules. (See, Id.).

Here again, Occhino fails to allege any specific causes of action against the Management Defendants. (See, Compl. [Docket No. 1]). The Court observes, however, that in the portion of the form-Complaint seeking the "basis for jurisdiction", Occhino refers to—among other things— (1) the Supremacy Clause of the Constitution of the United States; (2) 18 U.S.C. § 245; (3) the First Amendment; and (4) the Americans with Disabilities Act (hereinafter "ADA"). (See, Compl. [Docket No. 1], at 3, 4). Liberally construing his complaint in his favor, the Court will consider each of these purported bases for federal question subject matter jurisdiction as a possible claim Occhino raises against the Management Defendants.

The Court will first consider the purported Supremacy Clause claim. Under the Supremacy Clause, the Constitution of the United States and federal law are "the supreme Law of the Land," and "the Judges in every State shall be bound thereby." U.S. Const. art VI. Nothing in the

Complaint suggests any possible Supremacy Clause violation by the Management Defendants. Furthermore, "[t]he Supremacy Clause does not create a private cause of action." Westbrook v. O'Brien, No. 1:07-cv-937, 2007 WL 3462337, at *2 (W.D. Mich. Nov. 15, 2007) (citing Legal Envtl. Assistance Fund., Inc. v. Pegues, 904 F.2d 640, 643–44 (11th Cir. 1990)); see, Armstrong v. Exception Child Ctr., Inc., 135 S.Ct. 1378, 1383 (2015); Urquiza v. Oklahoma ex rel. Kunzweiler, No. 18-cv-025 (JED/JFJ), 2018 WL 2123381, at *5 (N.D. Okla. May 8, 2018); Sears v. Kroger Co., No. 2:17-cv-04394, 2018 WL 4398875, at *5 (S.D.W. Va. May 23, 2018), report and recommendation adopted, 2018 WL 3025954 (S.D.W. Va. June 18, 2018); Williams v. Harris Cty. Hous. Auth., No. 14-cv-3570, 2016 WL 8730315, at *9 (S.D. Tex. Sept. 2, 2016), report and recommendation adopted, 2016 WL 5661705 (S.D. Tex. Sept. 30, 2016).

Occhino's second apparent asserted cause of action concerns 18 U.S.C. § 245. (See, Compl., [Docket No. 1], at 3). Title 18 U.S.C. § 245 makes it a federal crime to interfere with various "federally protected activities." The statute lists numerous such activities, but for purposes of the present analysis, the Court need not delve into any of them.

This cause of action fails for the more fundamental reason that 18 U.S.C. § 245, is a federal criminal statute, and as such, it does not create a right of action that private litigants, like Occhino, can press in a civil action. See, e.g., Hudson v. Wilford, No. 16-cv-0058 (SRN/JSM), 2016 WL 11486907, at *6 (D. Minn. May 11, 2016) (stating that 18 U.S.C. § 245 does not provide a private right of action), report and recommendation adopted sub nom., Hudson v. Wilford, Geske & Cook, P.A., 2016 WL 3383268 (D. Minn. June 17, 2016); Roberson v. Pearson, No. 12-cv-2056 (ADM/FLN), 2012 WL 4128303, at *1 (D. Minn. Aug. 27, 2012) (same), report and recommendation adopted, 2012 WL 4128293 (D. Minn. Sept. 18, 2012). Thus, regardless of any

11

conduct alleged in the Complaint, Occhino simply cannot state a claim upon which relief may be granted against the Management Defendant for any purported violation of 18 U.S.C. § 245.

The Complaint next invokes the First Amendment, (see, Compl., [Docket No. 1], at 3), which, of course, contains various protections of speech and expression. Liberally construing his Complaint in his favor, Occhino appears to allege that (1) he had a right to complain about the Management Defendants' enforcement of community rules in their properties, (2) they decided to evict him because of his complaints, and so (3) the decision to begin eviction proceedings was inappropriate retaliation under the First Amendment.

Here again, Occhino fails to state a claim upon which relief may be granted. As the United States Supreme Court has recently noted, "[t]he text and original meaning of" the First Amendment (as well as the Fourteenth, which makes the First Amendment applicable to the states), "establish that the Free Speech Clause prohibits only *governmental* abridgment of speech." Manhattan Cmty. Access Corp. v. Halleck, 139 S. Ct. 1921, 1928 (2019) (emphasis in original). In contrast, "[t]he Free Speech Clause does not prohibit *private* abridgment of speech." Id. (emphasis in original) (citing cases).

Occhino's Complaint is devoid of any allegation that the Management Defendants actions constituted a "governmental abridgment of" Occhino's speech. Occhino merely alleges that the private entity Management Defendants initiated eviction procedures against him in retaliation for his criticizing them. Without more, any First Amendment claim against the Management Defendants cannot prevail. On this basis, the Court finds that Occhino has failed to plausibly state a claim upon which relief can be granted as to his First Amendment claim against the Management Defendants.

This leaves for this Court's review Occhino's purported claim against the Management Defendants under the Americans With Disabilities Act (hereinafter the "ADA"). Occhino does not specify what ADA provision might provide him a claim. Liberally construing his Complaint in his favor, the most likely provision of the ADA upon which Occhino might rely is 42 U.S.C. § 12182(a), under which "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."

But even under 42 U.S.C. § 12182(a), Occhino fails to state a claim upon which relief may be granted. Critically, to plead a 42 U.S.C. § 12182(a) claim, a plaintiff must allege that the relevant defendants took an adverse action against him based on (or motivated by) his disability. See, e.g., Argenyi v. Creighton Univ., 703 F.3d 441, 447 (8th Cir. 2013) (citing Mershon v. St. Louis Univ., 442 F.3d 1069, 1076–77 (8th Cir. 2006)); Lindgren v. Camphill Vill. Minn., Inc., No. 00-cv-2771 (RHK/RLE), 2002 WL 1332796, at *5 (D. Minn. June 13, 2002).

Nothing in the present Complaint even suggests that the Management Defendants took any action against Occhino because of any disability he has. Indeed, Occhino's ADA argument is undercut by the fact that, for purposes of his First Amendment claim, he claims that the Management Defendants wanted to evict him as retaliation because of his complaints about those Defendants' refusal to enforce Greysolon community rules. That motivation, as alleged by Plaintiff himself, indicates that the Management Defendants' decision to evict was not based on any disability of Occhino's. For these reasons, the undersigned finds that Occhino has failed to state a 42 U.S.C. § 12182(a) claim upon which relief can be granted.

In summary, Occhino fails to state any claim upon which relief can be granted as alleged against the Management Defendant.[8] The Court therefore recommends that the claims against Defendants Geo. Sherman and Assoc., and Duluth Management of Greysolon Plaza be **DISMISSED without prejudice**.

### III. Conclusion

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Occhino's claims against Defendant State of Minnesota be **DISMISSED without prejudice**;

2. Occhino's claims against Defendant Referee John Schulte be **DISMISSED without prejudice**;

3. Occhino's claims against Defendants "Hanft Fride Law Firm," Holly Laboon Hallar, and Brent Malvick be **DISMISSED without prejudice**;

4. Occhino's claims against Defendants Geo. Sherman and Associates and "Duluth Management at Greysolon Plaza" be **DISMISSED without prejudice**;

5. Occhino's Application to Proceed in District Court Without Prepaying Fees or Costs, [Docket No. 2], be **DENIED**; and

6. This action be **DISMISSED**.

---

[8] The Court also observes that to the extent Occhino seeks to bring some other federal law challenge concerning his eviction, there seems to be a larger overarching problem. The Exhibits that Occhino himself filed indicate that Occhino was not actually evicted from Greysolon Plaza. Eviction proceedings began, and a Court issued an Order of eviction, but that Order was stayed and eventually expunged following negotiation by Greysolon management and Occhino. As a result of that negotiation, it appears that Occhino agreed to voluntarily move out of Greysolon Plaza. Given that apparent agreement, it is hard to see what cause of action Occhino could maintain against the Management Defendants.

**IT IS ALSO ORDERED THAT:**

1. Occhino's Motion to Appoint Counsel, [Docket No. 9], is **DENIED**.

Dated: November 15, 2019
                                           s/Leo I. Brisbois
                                           Hon. Leo I. Brisbois
                                           United States Magistrate Judge

**NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).